In the Matter of EDWARD T. CUGELL et al., Petitioners, against GEORGE P. MONAGHAN, as Commissioner of Police of the City of New York, Respondent.

Supreme Court, Special Term, New York County, September 6, 1951.

*Hyman Barshay* for petitioners.

*John P. McGrath, Corporation Counsel* (*Arthur J. Goldsmith* and *George J. Elkins* of counsel), for respondent.

Di Falco, J. The petitioners have instituted this proceeding, pursuant to article 78 of the Civil Practice Act, to compel the police commissioner of the city of New York to reinstate petitioners as members of the police force of the city of New York, with back pay from the date of their respective suspensions.

Petitioners, except for Reilly, were suspended on May 9, 1951, without pay, by reason of the fact that on or about May 8, 1951, the December, 1949, Grand Jury for Kings County handed up an indictment in the County Court of the said county accusing the said patrolmen of being coconspirators with the defendants named therein in a conspiracy to permit acts injurious to public morals and for the perversion and obstruction of justice

and of the true administration of the laws, and to commit crimes in violation of sections 372, 997, 1826, 1841, 1857, and of other sections and subdivisions of article 88 of the Penal Law and to commit acts in violation of section 435 of the Charter of the City of New York in that they conspired to cause, suffer and permit one Harry Gross to maintain and conduct a book-making business and to abet him therein and to aid and assist the said Harry Gross and his employees to avoid arrest and conviction for the crime of book-making and other crimes and to protect the said Harry Gross and other persons in their operation and conduct of the said book-making business from detection, arrest and conviction. In the said indictment, the petitioners, Edward T. Cugell, John F. Harris, Rocco J. Pancaldo, William A. Daab and James F. Reilly, were accused directly of receiving sums of money from Harry Gross in furtherance of the said conspiracy. The police commissioner was also informed by the District Attorney's office of Kings County that the petitioner, Sidney Rosenstock, had also received sums of money from Harry Gross in furtherance of the conspiracy.

As soon as the above facts and indictment became public, the then police commissioner, Thomas F. Murphy, caused the petitioners to be suspended from the police force without pay. On May 15, 1951, charges and specifications accusing the said officers of conduct unbecoming an officer and prejudicial to good order, efficiency and discipline and neglect of duty and violation of the rules and regulations of the police department were served upon the petitioners.

On June 5, 1951, a preliminary hearing was held before a deputy police commissioner and the petitioners demanded a prompt trial of the charges or, in the alternative, that they be reinstated with pay, pending the hearing of the charges. Their application was denied and their trial date was adjourned to September 19, 1951, for the reason that the police commissioner did not have access to the evidence or witnesses upon which the charges against the petitioners were based and the District Attorney of Kings County, Miles F. MacDonald, under whose control the evidence and witnesses are, refused to release such evidence and witnesses until after the conclusion of the trial in the County Court of Kings County, which is presently scheduled to commence on September 10, 1951.

The petitioner, Reilly, was suspended on May 10, 1951, because of an indictment pending against him for the crime of perjury. He was acquitted after trial and thereafter, he was served with charges and given a departmental trial. The depart-

mental trial terminated on June 1, 1951, but no final determination has been made. The police commissioner has stated that as to him, and as to the petitioner, William A. Daab, who was tried on departmental charges not connected with those involved in this proceeding, which trial was concluded on July 18, 1951, and as to which no determination has as yet been made, that he prefers not to render any determination, pending the trial of these petitioners on the charges now pending against them.

The petitioners assert that the trial in the County Court of Kings County, now scheduled to begin September 10, 1951, involves some twenty defendants and that it may reasonably be assumed that such trial will take several months. The inference is, therefore, obvious that the petitioners cannot and will not be given a departmental trial on the charges against them for a substantial period of time.

The petitioners contend, in support of this present proceeding, that the police commissioner lacks the power to suspend the petitioners without pay for a period of more than thirty days and that, even if he had such power, the length of the suspension, which must necessarily depend upon the completion of the trial in the County Court of Kings County, is unreasonably long and that the police commissioner has, therefore, acted arbitrarily, capriciously and in excess of his powers.

The police commissioner predicates his suspensions upon the powers given to him by section 434a-20.0 of the Administrative Code of the City of New York, which reads as follows: " *Suspension of members of force.*— The commissioner shall have power to suspend, without pay, pending the trial of charges, any member of the force. If any member so suspended shall not be convicted by the commissioner of the charges so preferred, he shall be entitled to full pay from the date of suspension, notwithstanding such charges and suspension. "

This section of the Administrative Code is essentially similar to the language of section 292 of the Greater New York Charter (L. 1901, ch. 466).

By chapter 853 of the Laws of 1941, the Legislature of the State of New York amended subdivision 2 of section 22 of the Civil Service Law, so that it reads as follows: " *Removals generally.* No officer or employee holding a position in the competitive class of the civil service of the state, or any civil division or city thereof, shall be removed except for incompetency or misconduct. The person whose removal is sought shall have written notice of such proposed removal and of the reasons therefor, and shall be furnished with a copy of any

charges preferred against him, and shall be allowed a reasonable time for answering the same in writing. Pending the determination of such charges, such officer or employee may be suspended without pay for a period not exceeding thirty days. ''

The petitioners argue that the police commissioner's right to suspend, without pay, as set forth in the Administrative Code, is limited to a period of thirty days, as set forth in subdivision 2 of section 22 of the Civil Service Law. With this contention, I cannot agree.

Chapter 18 of the Administrative Code contains within itself the complete law with reference to the police department of the city of New York. The general plan in setting up the New York City Charter and the Administrative Code was to separate the law pertaining to the separate departments, as set forth in the chapters pertaining thereto. An examination of the administrative Code will indicate that the laws pertaining to the various departments of the city of New York, such as the department of housing and buildings, department of sanitation, department of health, etc., are provided for in separate chapters.

It was apparently recognized by the legislative body which prepared these laws that the police department required special statutes, which are not to be found in the laws pertaining to other departments. It has often been stated that a police officer occupies a unique position as an employee of the City of New York. Present litigation concerning the unionization of the police department indicates this. It is unquestionably true that to enable a police officer to carry out the functions of his office there must be in the eyes of the police commissioner and the public the greatest confidence in the integrity of the officer. The slightest suspicion cast upon the honesty and integrity of the police officer makes his services to the department and to the public, at best, doubtful. The public interests would be seriously jeopardized in the instance of a police officer if he were allowed to be incompetent or charged with misconduct and it was required that he be retained in office, pending the hearing of the charges. This does not necessarily apply to employees in other city departments. That it was intended that there be a distinction in the powers of suspension of the police commissioner and those of the heads of other departments will be found in various sections of the Administrative Code relating to the several city departments.

Thus, in the section relating to suspension concerning employees of the department of sanitation, section 752-6.0 of the Administrative Code of the City of New York provides as

follows: "*Removal and suspension of employees* — a. The commissioner, in his discretion, shall have power to punish any member of the uniformed force * * * by forfeiting or withholding pay for a specified time, not exceeding thirty days; by suspension, without pay during such suspension, for a period not exceeding thirty days; or by dismissal from the force."

With reference to the department of housing and buildings, section 642-3.0 of the Administrative Code states: "*Subordinates: discipline of.*— The commissioner shall have power to punish any employee, for neglect of duty, or omission to properly perform his duty, or for violation of rules, or neglect or disobedience of orders, or incapacity, or absence without leave, by forfeiting or withholding compensation for a specified time, or by suspension from duty with or without pay for a period not exceeding thirty days."

As no power of suspension is specifically granted in the laws pertaining to the department of health, department of water, gas and electricity, department of licenses, etc., there is an omnibus provision in chapter 40 of the Administrative Code of the City of New York entitled "OFFICERS AND EMPLOYEES", which reads as follows:

"§ 884–1.0 *Heads of agencies; power to make deductions from salaries of subordinates.* — Except as otherwise provided by law, every head of an agency is empowered: * * * 3. In his discretion, to suspend for not more than one month without pay, any subordinate pending the hearing and determination of charges against such subordinate, or the making of any explanation, as the case may be."

It will thus be observed that the power of the head of any city agency, other than the police department, and such other departments where it is otherwise provided by law, is specifically limited to suspend "for not more than one month without pay." The provision of the Administrative Code insofar as it affects the police department differs radically in its language from this provision in that it is provided that "the commissioner shall have power to suspend, without pay, pending the trial of charges, any member of the force." The thirty-day limitation is not applicable to the police department.

In *Lehmann* v. *City of New York* (153 Misc. 834, unanimously affirmed without opinion by the Appellate Division of the first department, 244 App. Div. 712), Mr. Justice SHIENTAG, then writing for the Appellate Term, was confronted with the specific question as to whether a police officer who had been fined thirty days' pay was entitled to his salary for the period during

which he was suspended without pay, pending the disposition of the departmental charges against him, upon which he was convicted and fined. The plaintiff, a member of the police department of the city of New York, had been suspended from duty without pay on April 7, 1933. A departmental trial was held on July 5, 1933, and continued on October 4, 1933. Plaintiff was restored to duty on November 20, 1933, pending the decision of the police commissioner. On the 21st day of December, 1933, he was found guilty as charged, and a fine of thirty days' pay was imposed. Action was then brought by the police officer against the City of New York to recover salary unpaid during the suspension for the period from April 7, 1933, the date of the charges, to November 20, 1933, when he was restored to duty. There was presented for interpretation by the court certain provisions of the Greater New York Charter, which were similar to the sections of the Administrative Code hereinbefore set forth. One section provided that the police commissioner had the right to suspend without pay, pending the trial of charges, any member of the police force. Another section of the charter (Greater New York Charter, § 1569–a), now section 884–1.0 of the Administrative Code, hereinabove set forth, provided that " Except as otherwise specially provided, the head of a city department * * * may, in his discretion, suspend, for not more than one month without pay any officer or employee of his department * * * pending the hearing and determination of charges against him or the making of an explanation, as the case may be. "

The Appellate Term held that because specific provision was made elsewhere in the charter, dealing with the right of the police commissioner to suspend without pay, the thirty-day limitation did not limit the rights of the police commissioner. Although the plaintiff had argued, as do the petitioners here, that such application of law " may result in a situation where an officer may be suspended indefinitely without pay for a trivial offense, warranting a reprimand or small fine, and yet actually be punished more severely by reason of his loss of wages during the suspension period ", the court sustained the right of the police commissioner to suspend without pay for an indefinite period not limited to thirty days. This is illustrative of the reasoning that the police department is considered in a category different from other city departments and that the powers of suspension set forth in the Administrative Code permit indefinite suspension in proper cases.

The language of subdivision 2 of section 22 of the Civil Service Law was enacted into law in 1941 (L. 1941, ch. 853), subsequent to the promulgation of the Administrative Code. Was it intended that section 22 of the Civil Service Law was to act as limitation upon the powers of the police commissioner? I hold that it was not.

Apparently there appears to have been no express authority in New York State, prior to the amendment of section 22 of the Civil Service Law, for the suspension of a civil service employee, pending the hearing of charges against him (*Matter of Lindquist* v. *City of Jamestown*, 192 Misc. 906).

It was deemed that the power to remove an officer for cause included the power to suspend him until the charges against him could be heard. The Legislature clarified the law of New York State in this respect in 1941 by adopting the amendment to section 22 of the Civil Service Law. Such amendment was not intended to affect other special laws relating to this power of suspension. Support for this is found in the language contained in subdivision 3 of section 22, which reads, " Nothing herein contained shall be construed to repeal or modify any general, special, local law or charter provision relating to the removal or suspension of officers or employees in the competitive class of the civil service of the state or any city thereof. " Although this sentence appears at the close of subdivision 3, it was the last sentence of the act when it was added to the law in 1941 and should be construed as affecting the entire act (*Matter of Lindquist* v. *City of Jamestown, supra*).

Although section 22 of the Civil Service Act applies to civil service employees generally, it has been held that where specific provisions applicable to a particular class of civil service employees are found elsewhere in the law, subdivision 2 of section 22 does not apply.

In *Baker* v. *Board of Educ. of City of New York* (62 N. Y. S. 2d 372) action was instituted to recover salary allegedly due plaintiff, an employee of the New York City board of education during the period of his suspension and prior to his retirement. The first defense was attacked on the ground that plaintiff, a civil service employee, could not be suspended for a longer period of time than provided in subdivision 2 of section 22 of the Civil Service Law. The court stated (p. 373): " The claim that section 22 of the Civil Service Law requires the granting of the motion to strike out the first defense is devoid of merit. Plaintiff was an employee of the Board of Education and as such came within the provisions of Sections 870 and 872 of the

Education Law. Under them he was subject to suspension without pay from the time the charges were preferred. Matter of Mitchell v. Board of Education of the City of New Rochelle, 252 App. Div. 873, 300 N. Y. S. 285. These sections are controlling and they specifically apply to an employee of the Board of Education of the City of New York. ''

In *Matter of Kelly* v. *Board of Educ. of City of New York* (234 App. Div. 239) the Appellate Division of the first department stated that the petitioner was properly suspended for more than thirty days under the State Education Law even though a provision of the Charter of New York City limits suspension to a period of one month, by reason of the fact that the law which governs a particular body defines the limits of suspension.

Having concluded that the police commissioner was empowered by law to suspend the petitioners herein without pay, pending the trial of charges against them, for a period in excess of thirty days, I turn now to the question as to whether the actions of the police commissioner were arbitrary, capricious and in disregard of the rights of the petitioners. The suspension has already existed three months and will, undoubtedly, continue for several further months. The petitioners claim that the suspension without pay has caused and is causing great economic hardship and that during the period of suspension, they have found it difficult, if not impossible, to secure other employment. Under normal circumstances, a suspension of such duration would not be permitted to continue. The thirty-day limitation on suspensions of other civil service employees, as set forth in the Civil Service Law, is indicative of legislative intent as to the reasonable duration of suspension without trial. It is imposing a harsh burden on petitioners to deprive them of their means of livelihood and their source of income without according them an expeditious trial. The delay, however, in this case, has been brought about by unusual circumstances. As has heretofore been stated, the charges against the petitioners originated with the Grand Jury of Kings County. This body, which has performed such outstanding public service, after hearing many witnesses, felt it was justified in making certain accusations against petitioners. These accusations directly affected the petitioners as police officers and resulted in the filing of charges by the police commissioner. However, as the evidence and witnesses are within the sole jurisdiction of the District Attorney of Kings County, who refuses to release this evidence pending the major trial to be held in the County Court of Kings County, the police commissioner finds himself

unable to proceed with the departmental trial. Obviously, this is a situation over which the police commissioner has no control and one for which he can in no way be held responsible. The petitioners were granted a preliminary hearing within thirty days after the original charges were filed. I am certain that if the evidence had then been available to the police commissioner, the petitioners would have been afforded a prompt and expeditious hearing of the charges. The postponement of their trial to September 19th is indicative of the police commissioner's intent to have an early hearing. It is undisputed that the petitioners are suffering some degree of hardship by reason of the inability of the police commissioner to proceed with the charges at this time. Unfortunate as this situation may be, and blameless though the petitioners may be, the police commissioner is equally blameless for the delay. The petitioners are entitled to a prompt trial. I cannot find any facts and circumstances, however, which lead to the belief that the commissioner is willfully or arbitrarily withholding such trial from them. Under the circumstances here disclosed, the continued suspension of the petitioners is not unreasonable, arbitrary, unlawful or capricious. This does not mean to say that the police commissioner can unduly delay the trial, or deny to the petitioners as prompt a hearing as the circumstances will warrant. Should there be any unreasonable delay in the trial in the County Court of Kings County, or should the departmental trial be unreasonably delayed, subsequent to the disposition of the Kings County Court matter, the petitioners may renew their application.

The present application made by the petitioners is, therefore, denied.