Wilmer J. Patlow, J.
Plaintiff is a police officer employed by the City of Rochester with civil service status. On or about May 22, 1972, he was served with charges of misconduct by the Police Commissioner and suspended without pay pursuant to subdivision 3 of section 75 of the Civil Service Law, pending disposition of those charges.
An investigation by the Monroe County Grand Jury resulted in plaintiff being indicted on July 28, 1972 on various drug charges. An additional investigation by a Federal Grand Jury resulted in further drug indictments on or about November 29, 1972. Because of the Federal indictments, on or about November 30, 1972, plaintiff was again served with misconduct charges by the Police Commissioner and, once more, suspended without pay.
Ultimately, plaintiff was cleared of all criminal charges. He was acquitted of one of the Federal indictments on June 15, *196 1973, all State indictments were dismissed on October 11, 1973, and on December 12, 1973 the only remaining Federal indictment was dismissed.
The Commissioner of Police in both of the suspension actions on May 22, ' 1972 and November 30, 1972 informed plaintiff that he was entitled to a hearing on the various charges and that such hearing would be held within a 30-day period from the afore-mentioned dates. At the request of plaintiffs counsel, the hearings were postponed until the conclusion of all criminal proceedings. Plaintiffs suspension of course continued, since the charges remained pending.
The disciplinary hearing was finally held on December 12, 1973, at which time plaintiff pled guilty to an amended charge and was suspended for 30 days; from November 16, 1973 to December 16, 1973. Thereafter, he returned to line duty as a police officer.
Plaintiff now sues his defendant employer for approximately $19,000 in back pay covering the period May 22, 1972 to December 16, 1973, less the 30-day suspension time.
Defendant contends that plaintiff, by requesting postponement of his disciplinary hearing until the conclusion of all criminal proceedings, waived his right to back pay.
Plaintiff counters by asserting that any hearing held prior to the conclusion of the criminal proceedings would violate his privilege against self incrimination; and if indeed there was a waiver on his part, it was "under duress” for fear of self incrimination and therefore involuntary and unlawful.
A nonjury trial was held before this court.
The uncontradicted testimony of the then Police Commissioner (now Supreme Court Justice) John A. Mastrella was to the effect that during both 30-day suspension periods plaintiff’s attorney asked that the disciplinary hearing be postponed until the conclusion of all pending criminal charges, and that the suspension continue without pay. The former commissioner further testified that such extension was granted on condition that back pay be waived. He also testified that his department stood ready, willing and able to conduct the hearing at any time subsequent to May 22, 1972.
The statutory provision applicable to the case at bar (Civil Service Law, § 75, subd 3) reads, in significant part, as follows:
"3. Suspension pending determination of charges; penalties. Pending the hearing and determination of charges of incompe *197 tency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days.”
The rights of a civil servant to back pay, who has been suspended for a period in excess of 30 days, is clearly spelled out in the leading case of Amkraut v Hults (21 AD2d 260). There, the court ruled (p 263) that if the delay in the proceeding is occasioned by the conduct of the accused, he cannot "justly be heard to complain nor be allowed a recompense for the period involved.” Conceding the hardship that may be endured by an unpaid suspended civil servant, the court went onto say (p 263) that "[i]n all fairness, a prompt disposition is desirable from the standpoint of all parties. Where that does not occur, he who is responsible should assume the risk of liability for some compensation.” (Emphasis supplied.)
Applying a precise reading of the Amkraut decision to the facts in the case, at bar, leads this court to find that not only was the delay in the proceeding occasioned by the conduct of the accused, but also more significantly, there is not a scintilla of evidence that defendant is in any way responsible for that delay. Lacking such responsibility, defendant should not be forced to "assume the risk of liability” for back pay.
Additionally, the court would point out that one of the purposes of the Legislature in enacting section 75 of the Civil Service Law was to afford some protection to the property rights of its civil servants. Those protections are clearly specified in the statute. Thus, we find subdivision 1 prohibits removal or other disciplinary action without a hearing upon stated charges; subdivision 2 requires that a public employer give written notice to an employee against whom charges are filed, as well as a copy of those charges, and allows at least eight days for the employee to answer same in writing; and subdivision 3, in addition to limiting an employee’s suspension without pay to 30 days; mandates that if the employee is acquitted of the charges he must be restored to his position with full pay for the suspension period.
To adopt plaintiff’s position would in effect add new specific and far-reaching protections. A public employee, under indictment, would be allowed to postpone his disciplinary hearing and continue under suspension until criminal proceedings were completed, no matter how remote in time; and his employer would be liable for any and all accumulated back pay until such hearing, regardless of whether or not the *198 employee was acquitted at the hearing or for that matter acquitted of the criminal charges. The fiscal ramifications of this concept upon the governmental employer, and ultimately the taxpaying public, are, to say the least, momentous.
It has been said "the expression of legislative will in section 75 is so specific or so explicit to the point that there is no room for doubt as to intent and it should take a like expression of legislative will to show a reversal of the policy so declared.” (Steger v Farrell, 35 Misc 2d 614, 616.) This court finds that to engraft plaintiffs position onto section 75 of the Civil Service Law would constitute such a reversal of the declared legislative policy and is therefore judicially impermissible.
Furthermore, this court interprets Garrity v New Jersey (385 US 493, 500) as holding that the Fourteenth Amendment prohibits the use of statements obtained at the departmental disciplinary hearing in subsequent criminal proceedings. Such statements, being inadmissible, directly rebuts plaintiffs argument that any hearing prior to the conclusion of the criminal proceedings violates his privilege against self incrimination.
Finally, plaintiff, relying on Fuentes v Shevin (407 US 67) raises the constitutional due process argument that he is entitled to a hearing before any suspension can take place. However, subjected to the Fuentes test, the constitutionality of subdivision 3 of section 75 of the Civil Service Law has been upheld. (Palmermo v Eisenberg, 81 Misc 2d 1014.) Therefore, due process does not require a hearing prior to suspension.
Based upon all of the foregoing, the court finds in favor of defendant.