OPINION OF THE COURT
Joan A. Madden, J.
*863 In this CPLR article 78 proceeding, petitioner Clayton Bullock seeks to annul the determination of Raymond W. Kelly, as Police Commissioner of the City of New York, the Police Department of the City of New York (NYPD), and the City of New York (collectively the respondents) denying his request for back pay and to compel respondents to award him such pay and to restore his time and other benefits, together with interest, pursuant to Administrative Code of the City of New York § 14-123. Respondents file a verified answer opposing the petition, which is granted for the reasons below.
Background
Bullock became a police officer with the NYPD in July 1986. On October 17, 2002, Bullock was arrested on charges of second degree murder in connection with the death of Donna Towe, and was remanded to the custody of the New York City Department of Correction without bail. At that time, Bullock was also suspended from the NYPD without pay.
On October 21, 2002, the NYPD issued departmental charges and specifications against Bullock alleging that Bullock caused Towe’s death by compressing her neck and fracturing her hyoid bone, and, two days later, a Bronx County grand jury indicted him on two counts of murder in the second degree and one count of manslaughter in the first degree.
Bullock subsequently retained Dr. Charles Wetli, the chief medical examiner of Suffolk County, as an expert. Dr. Wetli conducted a review of the forensic and medical findings regarding the charges against Bullock, and determined that the original autopsy conducted by the New York City Medical Examiner’s Office was incorrect in its conclusion that Towe had sustained a broken hyoid bone, and this determination was confirmed in a follow-up review conducted by the New York City Medical Examiner’s Office.
On October 9, 2003, based on the finding that Towe had not sustained a broken hyoid bone, the District Attorney’s Office consented to Bullock being released from prison on his own recognizance. On October 27, 2003, the NYPD took Bullock off suspension and placed him on modified duty with full pay and benefits.
On February 9, 2004, after a jury trial in the Supreme Court, Bronx County, Bullock was acquitted of all the criminal charges related to Towe’s death. Following Bullock’s acquittal on the criminal charges, the NYPD, on December 14, 2004, amended *864 the departmental charges still pending against Bullock to conform with the findings that Towe’s hyoid bone had not been broken.
From May 6, 2005 through June 30, 2005, a departmental trial was conducted before Assistant Deputy Commissioner Michael D. Sarner. After reviewing the evidence, Sarner issued a report and recommendation dated August 26, 2005 finding Bullock not guilty of two of the three departmental charges against him, and dismissing the third. Then, on September 29, 2005, the Police Commissioner approved Sarner’s report and recommendation.
Subsequently, Bullock’s attorney requested that the Police Department reimburse Bullock for the time, pay and benefits lost to him while he was suspended. By letter dated June 30, 2006, the Deputy Commissioner of Legal Matters for the NYPD denied Bullock’s request for back pay, explaining that
“[sjince Police Officer Bullock could not be relieved from suspension as he was not available for assignment to any duty status, he is not entitled to be paid for the time in question. Indeed, once Police Officer Bullock was released from incarceration and available for assignment, he was restored to modified duty status without delay and with full pay and benefits.”
Bullock commenced this article 78 proceeding on September 27, 2006 seeking to annul the determination denying his request for back pay, and to compel the respondents to tender to him the requested back pay, with the accompanying time and benefits, as well as the interest thereon, pursuant to Administrative Code § 14-123. Respondents cross-moved to dismiss the petition on statute of limitations grounds and for failure to state a cause of action.
By interim decision and order dated May 24, 2007, the court denied the cross motion, and directed respondents to file a verified answer.
Discussion
“Mandamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief sought” (Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981]; see Klostermann v Cuomo, 61 NY2d 525, 539 [1984], quoting Matter of Gimprich v Board of Educ. of City of N.Y., 306 NY 401, 406 [1954] [“ ‘ “(w)hile a mandamus is an *865 appropriate remedy to enforce the performance of a ministerial duty, it is well settled that it will not be awarded to compel an act in respect to which the officer may exercise judgment or discretion” ’ ”]).
Moreover, where statutory authority prescribes certain ministerial duties to be taken by an officer, mandamus may be issued to compel such officer to perform those duties. (Klostermann, 61 NY2d 539, citing People ex rel. Francis v Common Council of City of Troy, 78 NY 33 [1879].)
In this case, the issue is whether respondents are required to award Bullock back pay and benefits in accordance with section 14-123 of the Administrative Code, which provides:
“Suspension of members of force. The commissioner shall have power to suspend, without pay, pending the trial of charges, any member of the force. If any member so suspended shall not be convicted by the commissioner of the charges so preferred, he or she shall be entitled to full pay from the date of suspension, notwithstanding such charges and suspension.”
It is well established that, under the rules of statutory construction, a statute should be construed to give full effect to the plain meaning of the words and that “courts are not to legislate under the guise of interpretation.” (People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995]; see also Locke v Aston, 31 AD3d 33, 36 [1st Dept 2006].)
Here, the unambiguous language of Administrative Code § 14-123 indicates that when, as here, a member of the police force is not convicted of the departmental charges preferred against him, he is entitled to full pay, which would presumably include benefits, from the date of suspension, notwithstanding the charges and suspension. (See Buric v Safir, 4 AD3d 160, 161 [1st Dept 2004], lv denied 2 NY3d 706 [2004] [“(t)he operative statute (Administrative Code § 14-123) makes no distinctions based on the seriousness of the charges or severity of the penalty, and entitles the police officer to full back pay from the date of suspension ... if not ‘convicted ... of the charges’ ”]; Matter of Rivera v Ward, 155 AD2d 285 [1st Dept 1989] [“a suspended officer is entitled to back pay only if he has not been convicted by the Commissioner of the charges so preferred”]; Matter of Hays v Ward, 144 Misc 2d 227, 233 [Sup Ct, NY County 1989] [to state a claim for back pay under Administrative Code § 14-123, petitioner must allege he was not convicted of the departmental charges that were preferred].)
*866 Despite the unambiguous language of Administrative Code § 14-123, in their verified answer and accompanying memorandum of law, respondents argue, as they did in their cross motion to dismiss, that since Bullock was unable to work while incarcerated and was placed on modified duty and restored to full pay when he was able to return to duty, Bullock should not be awarded back pay and accompanying benefits. In its interim decision and order, the court noted, in consideration of this argument, that “although the dismissal of disciplinary charges against Bullock would generally trigger his right to back pay under the section 14-123, his entitlement to such pay during his absence may be affected by other provisions of law, including the rules or regulations of the NYPD.”
In their recent submission, however, the only provisions of law cited by respondents in support of their position are two sections of the NYPD Patrol Guide allegedly violated by Bullock but for which no specifications or charges were ever issued against him. The first of these provision, NYPD Patrol Guide § 206-07 (verified answer, exhibit 2), requires a ranking officer to suspend a member of the NYPD who is absent without leave for five consecutive tours. Respondents argue that as Bullock was incarcerated and unable to appear for duty he was absent without leave, he is not entitled to back pay. This argument is unavailing since Bullock was not voluntarily absent without leave, but rather was suspended by order of the NYPD. The other NYPD Patrol Guide provision, section 206-08 (verified answer, exhibit 15), requires an officer to report to his residence precinct every Monday, Wednesday and Friday during his period of suspension, unless he requested a waiver of such requirement. However, the record shows that Bullock did not violate this provision since he states in his affidavit that he signed such a waiver and respondents provide no evidence to the contrary.
Accordingly, as the provisions of the Patrol Guide relied on by respondents were not violated by Bullock, they do not provide a basis for denying his right to recover back pay in accordance with Administrative Code § 14-123.
Next, the case law cited by respondents is not controlling here. As noted in its interim decision and order Horne v Scher (47 AD2d 943 [2d Dept 1975]) does not involve a suspended and/or incarcerated police officer, or the application of Administrative Code § 14-123, but simply holds that an ill city employee who has exhausted his sick leave and was improperly terminated could recover back pay from the date on which he was ready, *867 willing and able to return to work. Matter of Amkraut v Hults (21 AD2d 260 [1st Dept], affd 15 NY2d 627 [1964]), and Shales v City of Rochester (91 Misc 2d 195 [Sup Ct, Monroe County 1977]), on which respondents also rely, address the circumstances under which an employee would be entitled to back pay when the employee is suspended in excess of 30 days in violation of Civil Service Law § 75 (3).[1] In Amkraut v Hults, the Appellate Division, First Department, held that, as long as the employee was not responsible for the delay, he could recover back pay for the period exceeding 30 days, even where he was found guilty of the charges against him. In Shales v City of Rochester (91 Misc 2d 195 [1977]), the court held that, since the employee was responsible for the delay, he could not recover back pay.
The holdings in these cases do not warrant the denial of back pay to Bullock since there is no evidence that Bullock was responsible for any delay in the disposition of the disciplinary charges against him. Instead, it appears from the record that any delay was the result of a decision by the NYPD to wait until the criminal charges were decided against Bullock before proceeding with the departmental charges against him. While such decision may have its merits under the circumstances presented, Bullock cannot be faulted for the situation, particularly as he was acquitted of all criminal and departmental charges against him.
Furthermore, under Civil Service Law § 75 (3-a),[2] which applies to New York City police officers, the NYPD cannot suspend an officer without pay for more than 30 days pending a hearing for determinations of misconduct. Additionally, even if an officer is found guilty of the charges against him, the provision has been interpreted to permit an officer to collect back pay when *868 his suspension without pay is for a period in excess of 30 days.[3] (Matter of Johnson v Kelly, 2 AD3d 155, 156 [1st Dept 2003]; Matter of McMillian v Kerik, 306 AD2d 17, 18 [1st Dept 2003].) Applying this law to the instant case, it becomes clear that Bullock, who was not found guilty of any of the departmental charges against him, is entitled to back pay for the full period of his suspension in accordance with the unambiguous language of Administrative Code § 14-123.
Respondents also argue that to pay Bullock while he was incarcerated would constitute an unlawful giving of public funds in violation of article VIII, section 1 of the New York Constitution. This argument is unavailing as it is without legal support. Furthermore, the holding in Matter of Adlerstein v Board of Educ. of City of N.Y. (96 AD2d 1077 [2d Dept 1983], affd 64 NY2d 90 [1987]), on which respondents rely, is inapplicable here. The petitioner in Adlerstein was a tenured teacher employed by the respondent who had been suspended based on charges brought against him pursuant to Education Law § 3020-a.
When petitioner failed to report to the administrative position that he was assigned to pending the determination of the charges against him, respondent withheld his wages. Subsequently, 5 of the 13 charges against petitioner were sustained, and petitioner was reassigned to another teaching position. Petitioner refused to accept the new assignment, and respondent continued to withhold his wages. In rejecting petitioner’s demand for back pay, respondent noted that the Education Law “has not been interpreted so as to allow a gift of public funds.” (96 AD2d at 1078.)
In upholding respondent’s denial of back pay to petitioner during the period that he did not report to his administrative position or new teaching assignment, the Appellate Division, Second Department, explained that while
“section 3020-a of the Education Law does not authorize the suspension of a tenured teacher without pay ... a suspended employee who refused to accept reassignment to substitute duty, [should not be afforded] the windfall of a vacation with pay pend *869 ing the disposition of a disciplinary proceeding some 26 months later.” (Matter of Adlerstein v Board of Educ. of City of N.Y., 96 AD2d at 1078.)
Unlike the petitioner in Adlerstein, Bullock did not refuse a reassignment or other offer of work during his period of suspension, but rather could not work as a result of his incarceration for crimes which provided the basis for his suspension. Moreover, as Bullock was acquitted of all charges against him, it cannot be said that his failure to work during the period of suspension was his fault.
Thus, as Administrative Code § 14-123 unambiguously requires that a suspended police officer, like Bullock, who is acquitted of all charges against him is entitled to full pay for the period of his suspension notwithstanding such charges and suspension, and respondents have cited no controlling law to the contrary, the petition must be granted.
Conclusion
In view of the above, it is ordered and adjudged that the petition is granted to the extent of directing that respondents pay Bullock the back pay he is owed for 376 days’ pay, with the accompanying pay and benefits[4] within 15 days of entry of this decision, order and judgment.

. Civil Service Law § 75 (3) provides, in part: “Suspension pending determination of charges;. . . Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days.”

. Civil Service Law § 75 (3-a) provides, in part:
“Suspension pending determinations of charges and penalties relating to police officers of the police department of the city of New York. Pending the hearing and determination of charges of incompetency or misconduct, a police officer employed by the police department of the city of New York may be suspended without pay for a period not exceeding thirty days.”

. Contrary to respondents’ argument, the holding in Matter of Cugell v Monaghan (201 Misc 607 [Sup Ct, NY County 1951]) that the 30-day statutory limit on a suspension without pay does not apply to New York City police officers is no longer good law since it was issued before the enactment of Civil Service Law § 75 (3-a).

. Bullock is not entitled to prejudgment interest. (Buric v Safir, 4 AD3d at 161.)